HARVEY S. SUTLIFF, PLAINTIFF IN ERROR, V. FRED S. JOHNSON ET AL., DEFENDANTS IN ERROR.

1. **Mills and Dams**: DAMAGES. In proceedings in *ad quod damnum* the landowner is entitled to compensation for the land overflowed and rendered useless by reason of the erection of the dam; and for the diminution in value of the residue of the tract by reason of the increased depth of the stream.

2. ————: RIGHTS OF GRANTEE. A party purchasing a mill and dam across a stream acquires by the purchase no greater right to maintain the dam than was possessed by his grantor; and until the statutory bar is complete will be liable in proceedings in *ad quod damnum* for the value of the land overflowed and appropriated by reason of the erection of the dam. *Ray v. A. & N. R. R. Co.*, 4 Neb., 439.

ERROR to the district court for Seward county. Tried below before POST, J., sitting for NORVAL, J.

*D. C. McKillip* and *R. P. Anderson*, for plaintiff in error.

*R. S. Norval*, for defendants in error.

MAXWELL, J.

In 1879 the defendants in error purchased the mill and appurtenances on the Blue river at Milford. At the time the defendants in error purchased the property the dam across the river was raised to eight or eight and one-half feet above the natural flow of the stream. In the fall of 1880 the defendants in error raised the dam to fourteen feet, and in the year 1882 instituted proceedings in *ad quod damnum* for the condemnation of the property over-flowed or injured by the backwater. The plaintiff in error at that time was the owner of the S. E. $\frac{1}{4}$, the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ and the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 26, 7, 10, R. 3 east, which was overflowed or affected by the raising of the dam. The plaintiff in error, therefore, was made a de-fendant in the condemnation proceedings. A jury was im-paneled, examined the property damaged, and made a re-port in conformity to the statute. The defendants below filed answers, and on the trial of the cause in the district court the jury returned a verdict for $30 in favor of the plaintiff in error for the damages sustained by him. A motion for a new trial having been overruled, judgment was rendered on the verdict.

The only question raised by the pleadings is the amount of damages to which the plaintiff in error is entitled. The testimony tends to show that the water in the river on the plaintiff's land is raised from four to six feet; that in con-sequence thereof some of the low ground along the river is flooded by the backwater and is of no value; that a con-siderable quantity of timber was growing along and near the banks of the stream on the plaintiff's land and that a portion of this has been killed and destroyed; that about

forty acres of this land lies west of the river, and prior to the raising of the dam was used as a pasture, and was connected with the main body of the land by two fords, at either of which in an ordinary stage of the river cattle or horses could cross, and at one of them loaded wagons could cross, etc., but that after raising the dam to fourteen feet these fords were destroyed and the land west of the river practically cut off from the other.

The attorneys for Sutliff asked the court to give the following instruction, which was refused:

"The jury are instructed that under the issues made in this case they should consider all past damages sustained by defendant Sutliff to said lands caused by raising said dam beyond eight feet in height, during the ten years immediately before the beginning of this action, if any such past damages to said land have been sustained by him, and you should include the same in your verdict in addition to the difference of market value of the land immediately after the raising the height of said dam, unless you further find from the evidence that said plaintiffs, F. S. Johnson & Co., or their predecessors, by proceedings under the statute, or from the owner of said lands, had obtained the right to so raise the same beyond the height of eight feet." The instruction asked it will be observed directed the jury to give such *damages* as were caused by raising the dam above eight feet at any time within ten years before bringing the action, and *also* the difference in "the market value of the land immediately before and immediately after the raising of the height of said dam." In this form it was calculated to mislead the jury, and therefore was properly refused. The court, however, had given an instruction "that these plaintiffs would not be liable for damages occasioned to defendant's land by backwater from said dam at any time prior to the time they became the owners of said mill, nor for any damages except such as directly follow from acts of the plaintiffs or their agents or employes." This is not

an action for trespass, but to fix the compensation to be paid to certain landowners for damages sustained by them by raising the dam owned by the defendants in error. By purchase they acquired merely the right possessed by their grantors. If such grantors had not acquired the right to raise the water in the bed of the river on the land of the plaintiff either by condemnation or otherwise, and ten years had not elapsed from the time of raising the dam to eight feet, until these proceedings were instituted the plaintiff would be entitled to recover for all the damages sustained by him by reason of the backwater. The reason is, he would not be barred of his right to recover the possession of the land until the statutory bar of ten years was complete.

In *Ray v. A. & N. R. R. Co.*, 4 Neb., 439, a corporation called the Burlington and South Western R. R. Co. located its line over the plaintiff's land, and the award of damages being made, appealed to the district court, where judgment was rendered against the company, but it failed to pay to the county judge the amount of the award or to pay the judgment. The company then assigned all its rights, interests, and franchises to the A. & N. R. R. Co., and it was held that it acquired no greater rights than were possessed by its assignor, and that it would not be permitted to operate the road across the plaintiff's land unless it paid the judgment. The same principle applies in this case. The instruction, therefore, is erroneous. It is evident, too, that the attempt to distinguish the damages occasioned by successively raising the dam tended to confuse the jury and was prejudicial to the plaintiff. The court refused to give the following instruction: "If you find that any part of the land in question has been overflowed by reason of said mill-dam and by reason of said overflow has been rendered useless and of no value to this defendant, H. S. Sutliff, you are instructed that so much of the land so overflowed is regarded in law as appropriated by the plaintiffs, F. S.

Johnson & Co., to their sole use and benefit, and the defendant Sutliff is entitled to the market value of said overflowed land in addition to the depreciation of the remainder of his land, and if you find any such overflowed land you should so find the value thereof and consider the same in arriving at your verdict." The testimony shows from one and a half to four or more acres were overflowed by raising the dam. This land certainly was appropriated, and the plaintiff was entitled to compensation therefor. The statute, while giving the party erecting a mill the right to erect a dam across a stream for the purpose of obtaining power to propel the machinery of the mill, yet protects the landowner by requiring compensation to be made to him for his land taken or damaged. He must be paid full compensation for the injury sustained. This means the value of the land appropriated and any damages to the residue of the tract by reason of the increased volume of water caused by the dam. The instruction in question, therefore, should have been given.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.