S. H. KYNER v. ELIZABETH UPSTILL ET AL.

[FILED JULY 1, 1890.]

1. **Mill-Dams:** INDEMNITY.  Where a mill-dam is built across a natural water-course without leave to build or to continue the same obtained under the provisions of the statute, the owner of an adjacent mill and dam, whose mill-power and premises may be affected or injured thereby, may prosecute proceedings for indemnity under the 14th sec. of chap. 57 *et seq.*, Comp. Stats., without recourse to the *ad quod damnum* under the preceding sections.

2. ———: THE INQUEST and proceedings returned by the sheriff under the writ of *ad quod damnum* not satisfactory to the plaintiff, whose remedy lies under the 14th section *et seq.* of the mills and mill-dams act, will not be deemed reversible error as to other proceedings for want of consistent application to the remedy sought.

ERROR to the district court for Brown county.    Tried below before KINKAID, J.

*M. B. Malloy,* for plaintiff in error, cited: Gould, Waters, sec. 610, and cases; *Smith v. Waddill,* 11 Leigh [Va.], 532.

*L. K. Alder, contra,* cited: *Seeley v. Bridges,* 13 Neb.,

547; *Nosser v. Seeley*, 10 Id., 460; *Stumbo v. Seeley*, 23 Id., 212; Washburn, R. P. [4th Ed.], 350.

COBB, CH. J.

This proceeding is brought on error from the district court of Brown county. The plaintiff in error made his application for the writ of *ad quod damnum* under the provisions of section 14 of the act entitled "Mills and mill-dams." The writ was issued, the jury selected and summoned. The original petition and application appear to have been lost from the files of the court below, but attached to the record, and not within the certification of the clerk, there is a substituted petition alleging that the plaintiff is the owner of the west half of the southwest quarter of section 30, township 30, range 20 west, and has had a fee simple and equitable ownership since the year 1883; that Long Pine creek flows from south to north almost one-half mile through the land; that the chief value of the land is from this stream and its power to propel and operate mills; that the plaintiff owns a large flouring mill on this stream, located on his said land with a dam across the creek immediately opposite the mill of the height of eleven feet, and the mill receives its power from the water from the dam; that the defendants own the west half of the northwest quarter of section 30, township 30, range 20 west, and Long Pine creek runs through it a distance of from 200 to 300 feet, and that defendants' land is about 175 feet north of plaintiff's mill; that plaintiff began the erection of his mill and dam March 16, 1885, and that in a few days afterwards the defendants, who live 200 feet northward of plaintiff's mill and dam, began the erection of a temporary mill and dam about seventy-five feet northward of the south line of their land, for the purpose of harassing the plaintiff and to destroy his mill power, backing the water onto his land and up against his

49

mill-dam and mill-wheel, causing damage to the plaintiff,
reducing the power of his mill and putting him to great
expense each year to keep his dam correspondingly higher
to secure the necessary power to operate his mill; that de-
fendants' dam backed the water onto plaintiff's land, mill,
and dam forty-two inches high, causing great damage, and
when defendants lower or raise the gate of their flume it
causes an increase or decrease in the power of the plaintiff's
mill, requiring a man to watch the rise and fall of the water,
and to regulate the mill machinery accordingly, and re-
quiring the plaintiff's dam to be raised twenty-six inches
higher to regain the necessary power; that the plaintiff's
flouring-mill is of public utility, and that he gave the de-
fendants ten days' notice in writing before making this ap-
plication, informing them that he should apply for a writ
of *ad quod damnum*, as provided by law; that the plaintiff
is damaged in $1,000 by reason of the premises, wherefore
he asks said writ and judgments for said amount of dam-
ages, and that the defendants' mill-dam be lowered twenty-
six inches.

On October 2, 1886, at a regular term of the district
court of said county, a writ of *ad quod damnum* was ordered
to be issued, directed to the sheriff, commanding him to
make a list of twenty-four disinterested freeholders of the
county and notify the defendants to appear at the clerk's
office on a day to be appointed, to strike alternately with
the plaintiff a jury of inquest, as provided by law.

On December 27, 1886, the parties struck such jury, and
the jury were notified to appear on plaintiff's land described
on January 8, 1887. The jury met at the time and place
designated and were charged by the sheriff:

" 1st. To view the land where the abutment was and
locate and circumscribe by water and bounds one acre
thereof, having due regard therein to the interests of both
parties, and to appraise the same according to its true value.

" 2d. To examine the lands above and below the prop-

erty of others, which are, or may probably be overflowed or injured, and say what the damage has been and will be to the several . defendants, naming them, and whether the mansion house, or any one else, or the offices, curtilages, or gardens thereunto immediately belonging will be overflowed or injured.

" 3d. To inquire whether, and· in what degree, fish of passage or ordinary navigation will be obstructed, and whether in their opinion the health of the neighborhood will be annoyed by the stagnation of the water.

" 4th. Whether and by what means any such obstruction, annoyance, or injury can be prevented.

" 5th. Whether such mill is, or will be, of public utility."

Of their proceedings they made the following return :

" We, the jury impaneled and sworn in the above entitled action, do find the following, to-wit :

" 1st. That the mill and dam of S. H. Kyner's, on the N. W. ¼ of the S. W. ¼ sec. 30, twp. 30, range 20, on Long Pine creek was begun to be erected on the 16th day of March, 1885.

" 2d. That said mill and dam were completed in 1885 and has been in continuous operation ever since, except when being repaired, and is a mill of public utility.

" 3d. That defendants in this cause have no right to flow water back onto the property of plaintiff.

" 4th. That defendants be caused to lower their dam so as to relieve plaintiff entirely from the back water caused by dam of defendants.

" 5th. That the costs of this cause shall be equally divided between plaintiff and defendants."

The defendants filed their answer and plea in bar admitting the ownership and possession of the lands described by the plaintiff; also their ownership and possession of the land described immediately north of that of the plaintiff, and that said creek flows through a portion of it, that they have built a mill-dam across the same, and that they re-

ceived the notice of the plaintiff of his application for this writ, and deny each and every other allegation or matter in the petition contained.

They allege that they are the owners of the west half of the northwest quarter of section 30, township 30, range 20 west, in said county, of a rough and broken quality, and its chief value is in the water power therein; that Long Pine creek flows across the southeast corner for a distance of about 300 feet, cutting off a small corner and furnishing a good mill site and creating a water power for a mill, which are the chief elements of value and the principal inducement and consideration of defendants' becoming the purchasers of the land; that they commenced the erection of a saw-mill, turning lathe, machine shop, and dam upon their mill site and premises in the year 1883, the dam being built across said Long Pine creek about 100 feet north of the south line of their premises; that on account of a freshet and washout defendants were delayed in completing their dam and mill, and at the urgent request of citizens of the vicinity operated their mill for a time by steam machinery, but continued to work and prepare the mill for water power so far as time and means would permit, but by reason of delays were unable to complete their mill-dam for operations by water power until May, 1885, although the dam was completed on March 17, 1885, and the mill operated by water for about one month, when the dam and machinery were washed out, and defendants were unable to completely repair it for a period of eleven months, since which the mill has been operated by water power; that the dam when first built was of the height of three feet, raising the water in the flume and race connected with the dam to the height of sixteen inches, and no higher, since the completion of the dam in 1885, and never high enough to flow the water out of its natural channel within the banks of the creek, and no part of plaintiff's land or premises have been overflowed thereby; that defendants'

saw-mill is of public utility, and of great benefit to the people of the vicinity, and furnishes the only means of livelihood to defendants and their family.

That plaintiff's mill and dam were commenced and erected after that of defendants, and after the water of the creek had been raised by defendants' dam to its present height, which has been continuous since May, 1885. Plaintiff's grantors built his said mill and dam with a full knowledge of that height in 1886, and with full knowledge of all the facts alleged; that defendants appropriated said water power long before the plaintiff or any of his grantors attempted to use the same; that at the commencement of their mill and dam, the land on which the plaintiff's mill is now situate was then owned by one John Danks, who had given defendants authority and permission to back the water up the channel of the creek to the height and distance caused by the erection of their dam, and they proceeded under such authority and permission to expend large sums of money in the erection, improvement, and completion of their mill and dam, relying thereon and upon being the first occupants of said land and water for milling purposes.

That plaintiff owns the land and bed of said creek for a distance of half a mile above these defendants' land, commencing at their south line and within a distance of about 100 feet of defendants' dam. That plaintiff's grantors built his mill and dam within about eighty-five feet of the south line of defendants' land, when they could have built the same with equal expense and convenience at any point within half a mile of the south line of defendants' premises, or of 200 feet further up the stream, and been entirely clear of the back water caused by defendants' mill and dam. These proceedings were not commenced by the plaintiff in good faith, but maliciously for the purpose of harassing and annoying defendants, and procuring them to dispose of their property at a low and nominal sum.   Wherefore the

plaintiff is not entitled to the writ of *ad quod damnum* herein, and these proceedings should be quashed and judgment for the defendants.

To this answer the plaintiff replied that defendants did not begin the erection of their saw-mill, machine shop, and dam in the year 1883, and that they were not delayed by any freshet, overflow, or washout; that they were using steam power to propel the small amount of machinery they had in use, and were not working to the erection of a mill dam theretofore, but had two footlogs across the stream, which remained there for years, and that the present dam of defendants is twenty-six inches higher than it was in May, 1885, and has overflowed the land of plaintiff, and now does, causing the water to overflow the banks of the stream onto plaintiff's land. It is denied that defendants ever operated a mill by water power on Long Pine creek before plaintiff's mill was started; that defendants' mill is not of public utility. It is denied that John Danks ever gave defendants any privilege to back water on plaintiff's land, or that plaintiff was not the first occupant of his land and water privileges, and denies that he could put his mill and dam at any other place on his land where he could have operated it without great expense and inconvenience, and denies that these proceedings are malicious, but asserts that they are just.

There was a trial to the court and jury, but whether to the same jury as that originally summoned by the sheriff does not appear. The jury was charged as follows :

" I. That the ownership of the mills and mill-dams and lands on which they are situate is admitted by the litigants, and you need not consider the questions as to whether they have been proven.

" II. In determining the question of public utility of the mills to be run by water power, you should consider all of the evidence tending to show the size, structure, and capacity of said mills, the machinery used in the same, and

the quality of the machinery, and the amount and value of work they can be made to perform, and the evidence tending to show what has already been performed by and with said mills has a proper bearing upon this question.

" III. That the burden of proof is on plaintiff to establish by a preponderance of evidence the public utility of his mill to be operated by water power, and likewise the burden of proof is on defendants to establish the public utility of their mill propelled by water power.

" IV. Upon the second question propounded, you should take into consideration all of the testimony bearing upon it, including that tending to show wherein defendants first begun the erection of their mill, when it was finished, the use to which it was devoted, by what power it was operated, when they first begun the erection of their dam, how they prosecuted the work, the time expended upon the building of the dam, the time when work was suspended upon the same, the time when completed, and when first made use of, together with all of the circumstances of the completion of the same, with the evidence tending to show when the plaintiff's dam was begun to be erected, and the knowledge defendants had of the intentions of the plaintiff's grantors to erect the dam and mill.    Also, con - sider the evidence tending to show that a flow and washout occasioned the delay of defendants in their work, giving the defendants the benefit only of time necessarily lost on that account, and the evidence tending to show that notice had been given plaintiff's grantors of defendants' intention to erect said mill-dam, and that tending to show that plaintiff or his grantors had given defendants notice of his or their intention to erect the dam and mill, is proper evidence as tending to show the good faith of the defendants ; and this should be considered in connection with the evidence tending to show the action of the defendants before and after such notice or notices, with reference to said dam of defendants, if such notice was given.

"V. The evidence tending to show the height of defendants' dam and the effect it has had upon the operation of plaintiff's mill, the height of the water in the stream before defendants' dam had been raised to the height now complained of, and its height at any time in the year 1883, is proper evidence to be considered on the issues joined.

"VI. The burden is upon the plaintiff to prove by a preponderance of evidence all the issues of which he has the affirmative, or asserts to be a fact, and likewise the burden is upon the defendants to prove, in like manner, all the issues of which they have the affirmative, and upon the issues joined, unless the one who has the affirmative shall establish the same by a preponderance of the evidence, then you should find for the other party upon that question.

"VII. The burden of proof is upon plaintiff to prove by a preponderance of evidence that the existence of defendants' dam has caused him damages, the particular reasons of such damages, and the amount, if any."

On May 14, 1887, the jury, impaneled and sworn in open court, returned, in answer to the several questions submitted to them, the following special verdict:

"1. When did defendants begin the erection of their dam?

"Ans. In the spring of 1883.

"2. Did defendants continue labor upon its construction without unreasonable loss of time or delay?

"Ans. Yes, taking all existing circumstances into consideration.

"3. Did defendants complete their dam, and if so, when?

"Ans. Yes, in the spring of 1883.

"4. When did the plaintiff, or his grantors, begin the erection of their dam?

"Ans. On March 17, 1885.

"5. When was the dam of plaintiff completed?

"Ans. We have no evidence of any definite time it was completed.

"6. When was defendants' dam first put in use to run their mill?

"Ans. On May 30, 1885.

"7. When plaintiff began the erection of his dam, did that of the defendants' cause water to flow back to the place where the plaintiff's now is, or affect the depth, or make the water higher or deeper than it otherwise would have been?

"Ans. Yes.

"8. At the beginning of this action did, and now does, defendants' dam cause the water to flow back against the plaintiff's dam, and back up water upon it, or any part of his fixtures or machinery, in such manner as to interfere with the due operation of the same?

"Ans. Yes.

"9. Is there any difference now between the height of defendants' dam and its height when plaintiff's dam was begun to be erected, and if so, state what the difference is?

"Ans. There is none.

"10. Have defendants made any change in the height of their dam since the plaintiff's was begun, and if so, describe the change?

"Ans. There is none.

"11. Does the dam of defendants hinder or interfere with the operation of plaintiff's mill, or with the uses of plaintiff's dam, and if so, does such interference cause plaintiff damage in the manufacture of flour? Describe the effect, if any, the defendants' dam has upon the operation of plaintiff's mill propelled by water?

"Ans. Yes, by holding the water back.

"12. Does the existence of defendants' dam cause plaintiff damage to any considerable extent in the use of his dam?

"Ans. No.

"13. If the condition defendants' dam was in when this action was begun was such, as to height, as to injuriously affect plaintiff in the use of his mill-dam, then state just when the dam of defendants was put into such a condition as to so affect plaintiff; whether before or after the erection of plaintiff's dam had been commenced, and how long before or afterwards?

"Ans. In March, 1883, which was one year and ten months before plaintiff's dam was commenced.

"14. State whether defendants had had notice of plaintiff's, or of his grantor's, intention to erect a mill and dam, at the place where they now are, before they built their dam to its present height, and if so, how long before raising the height of their dam?

"Ans. They had not.

"15. State what change, if any, would be, and is, necessary in the defendants' dam to prevent it from interfering with the use of plaintiff's dam and mill in such manner as it might be used and operated if defendants' dam did not exist, describing, if it should be necessary, how much it should be lowered.

"Ans. By lowering defendants dam, but to what extent we do not know.

"16. Is the mill of plaintiff of public utility?

"Ans. Yes.

"17. Is the mill of defendants of public utility?

"Ans. Yes.

"18. State what change, if any, it would be necessary to make in the defendants' dam, so as to have it affect plaintiff's dam as to flowing water back up against it, just the same and no more than it would now be affected by it, if defendants' dam had been kept at the height, precisely, that it was when plaintiff first begun the erection of his dam, provided, of course, that you believe from the evidence that defendants' dam is now higher than it was when the erection of the plaintiff's was first begun.

"Ans. No change is necessary, as water is now no higher than when plaintiff begun his dam.

" 19. Has plaintiff sustained damages on account of the effect of the existence of defendants' dam in the use of his dam in the operation of his mill, and if so, what amount of damages has he already sustained? And if defendants' mill be of public utility, what amount of damage will the continued existence of said dam cause plaintiff from now on; give the amounts separately, if any?

" Ans. No damages in either case.

" 20. Has defendants' dam been made any higher since the beginning of the erection of plaintiff's dam than it was in 1883, and if so, how much?

"Ans. Not any."

Thereupon the plaintiff filed with the court below his motion to quash the inquest of the jury in this proceeding, reciting various duties which he alleges the jury were charged with, such as to view the land proposed for an abutment, and to locate and circumscribe by metes and bounds one acre, with due regard to the interests of both parties, and appraise the same according to its true value; to examine the lands above and below the property of others which are or may be overflowed or injured, and say what damage it has been and will be to the several defendants, and whether the mansion house, or any of the offices, curtilages, or gardens appertaining will be over-flowed or injured; to inquire whether any, and in what degree, fish of passage or ordinary navigation will be obstructed, and whether in their opinion the public health will be annoyed by the stagnation of the water; and whether and by what means any such obstruction, annoyance, or injury can be prevented, and whether such mill is or will be of public utility.

The plaintiff's motion continues at considerable length to explain the object and purpose of his writ of *ad quod damnum*, alleging that the jury failed to consider properly

and intelligently the matters given them in charge, and that they found and compelled the liability of the plaintiff for one-half the costs, and divided the balance between the parties. The motion was overruled.

Thereupon the cause was further heard on plaintiff's motion for a new trial, setting up :

I. Irregularities in the proceedings of the court and jury, in this, that the laws of the state on mills and mill-dams provide that if any person shall have built a mill and mill-dam, and shall cause the lands of others to be overflowed or injured thereby, that it shall be the duty of the jury to find the amount of damages there is by such overflow, and to assess the amount to the party injured.

II. That if it shall appear that the mill or appurtenances, or the mansion house, gardens, and grounds will be or have been overflowed or injured, such person shall not be allowed to build or continue the same.

It was conclusively proven, without controversy, that the plaintiff's land and mill power was overflowed by defendants, to the height of eighteen inches, and that according to the laws of this state they have no right so to do without first owning the land, or getting a deed of easement, or condemning it, according to law, by writ of *ad quod damnum.*

There was error in the assessment of damages, as the evidence and their findings show damages, and they failed to assess the amount.

That there were very few of the requirements of the laws on the subject complied with essential to the determination of the case.

That there is a conflict in the findings of the jury, in that they state that defendants' dam backs water on plaintiff's land and mill and again state that there is no damage, in which there should have been some damages.

That some of the findings are not sustained by evidence and are contrary to law.

That the jury of inquest did not find on any matter that they were instructed to find on, and did not decide on the matters they were instructed on intelligently; and errors appearing on the record; and that the trial court failed to instruct the jury in accordance with law; and that the attorney for the defense made statements to the jury which were not in evidence, and otherwise prejudiced the jury.

Which motion having been heard and overruled, the court rendered judgment for nominal damages for the plaintiff and that the plaintiff pay the costs of the jury and inquest, and that the balance of the costs be equally divided between the plaintiff and the defendants.

There is no bill of exceptions in the case. The plaintiff has seemed to have gone upon the theory that his action was brought under the first section of chapter 57, Comp. Stat., whereas it was brought, as has been seen, under section 14, and so, even if it were true, as stated in plaintiff's motion to quash, that the jury had been instructed to view the land proposed for abutment, and circumscribe by metes and bounds one acre thereof, and estimate the value of the same, they really had no such work of supererogation to perform in this case; and it was neither error in their duties, nor on the part of the court, that the omission complained of was not performed by them.

It is the erection and maintaining of the mill-dam by defendants, and the backing of the water upon the plaintiff's mill power that constituted the cause of action, if there be any, in the case. Individually, I would be inclined to hold that, as to the cause of action, he might have made an ordinary claim for damages without resorting to the writ of *ad quod damnum*. Indeed, I see no possible necessity for resorting to that writ, nor does it seem that the verdict of the jury, summoned therein by the sheriff, advanced the plaintiff's cause in any degree. It will be observed that the motion for a new trial is based chiefly, if not wholly, upon the real or supposed errors in

this proceeding, and not to errors of law occurring upon the trial before the court and the second jury, or to any denial by the court of any instructions offered by the plaintiff, or to the giving of any instructions over his objections. And as there is no evidence preserved in the case it is unnecessary to say that no error growing out of the want of evidence is or can be urged. It will be observed that there is no general verdict of record in the case, but as this fact is not complained of by the plaintiff in error, and as by their special findings the jury passed upon, at least once, every point in the case, the absence of a general verdict is not deemed fatal.

The petition in error, in all of its assignments, is confined to the proceedings had under the sheriff's writ, and the case proceeds upon the theory that action upon that writ according to the first thirteen sections of the act mentioned was necessary to give the district court jurisdiction to make up the issues and try the cause; and such proceedings not being shown to have been had, such as "examining the land above and below the property of others which may probably be overflowed or injured, inquiring whether and to what degree fish of passage or ordinary navigation will be obstructed," and the rest, the district court acquired no jurisdiction to make up the issues or to try the cause. The whole of this theory is believed to be erroneously applied to the case, but were it otherwise the plaintiff was the moving party in the case throughout; he procured the sheriff to take such proceedings as he did take; to make return of the writ to the district court, and is presumed to have moved the court to proceed with the case thereupon. At all events, if the court, or any officer, was about to proceed, or had taken action in the case, instituted by the plaintiff without the necessary preliminary steps, or in any manner not warranted by law, it was his duty to have interposed his objection to such proceedings, even to the dismissal of the case, and when he failed to do

so, but gave countenance and the sanction of his position as plaintiff to the making up of the issues by the court, a trial, and the instructing of the jury without objection or adverse motion on his part, awaited the chances of a favorable verdict, it is not conceived to be permissible on his part, at so late a day, to object that preliminary antecedent measures in the case were not according to law.

Moreover, of the eight distinct grounds stated in the petition in error, not one is directed even to the trial, verdict, or judgment of the court in what I conceive to be the case proper, but are all directed to such preliminary proceedings as I have stated might in my opinion been omitted from the case entirely.

There being no evidence in the case brought up, it must be a mere conjecture as to the justice of the findings of the jury. It would appear, however, that the twenty findings embrace every point raised by the pleadings, at least I have found no serious objection to them.

The judgment of the district court is

AFFIRMED.

THE other judges concur.