WORTHY T. NEWCOMB v. BENJAMIN R. ROYCE.

FILED OCTOBER 16, 1894.    NO. 5407.

1. **Mills and Mill-Dams:** ERECTION AND MAINTENANCE: DAM-AGES: ASSESSMENT: TRIAL: ISSUES. In a proceeding by the owner of land alleged to have been injured by the erection and maintenance of a mill-dam, the proceeding being under chapter 57, Compiled Statutes, upon the return of the jury of inquest the owner of the mill may by answer traverse both the petition and inquest as to their allegations and finding of damages; and if he do so, the questions of damage or no damage and the amount of damage become issues for the jury on trial of the case, subject to the same rules of evidence and burden of proof as in other cases. The damages found by the jury of inquest are not in such case final.

2. ——: ——: ASSESSMENT OF DAMAGES: TRIAL. The statute gives to the defendant in such case the right to put in issue and have tried according to the regular forms of law every fact alleged in the petition or found in the inquest.

3. ——: RIGHT TO OVERFLOW LAND: PAROL AGREEMENT: EN-FORCEMENT. If one owning land traversed by a stream sells a portion thereof to another and at the same time gives such other person by parol the right to overflow the remainder of the land by erecting a dam on the land so conveyed, and the purchaser, relying on such parol agreement, erects such dam and a mill operated by water, and maintains the same, the parol agreement becomes enforceable. If viewed as a license, the acts of the purchaser render the license irrevocable. If viewed as an easement, they take the grant out of the statute of frauds.

4. ——: ——: ASSESSMENT OF DAMAGES: TRIAL: ISSUE. In an *ad quod damnum* proceeding by the vendor in such case, where the vendee by answer pleads such grant, it is error to

submit to the trial jury simply the question as to whether the damages assessed by the jury of inquest had been paid, the issue being not whether the damages so assessed have been paid, but whether there has been a grant of the water rights exercised.

Error from the district court of Clay county. Tried below before Morris, J.

The facts are stated in the opinion.

*Thomas H. Matters*, for plaintiff in error:

The court erred in not submitting to the jury the issue as to whether or not any or all of the claim of defendant in error had been paid. (6 Lawson, Rights, Remedies & Practice, sec. 2924; *Cowles v. Kidder*, 24 N. H., 364; *Rerick v. Kern*, 14 S. & R. [Pa.], 267; *M'Kellip v. M'Ill-henney*, 4 Watts [Pa.], 317.)

The court erred in submitting the question whether or not the damage was paid, to be answered "yes" or "no," the true question being, what amount of the damages was unpaid? (*Clarke v. Chicago, K. & N. R. Co.*, 23 Neb., 616; *Omaha Belt R. Co. v. Johnson*, 24 Neb., 708.)

*J. L. Epperson* and *Leslie G. Hurd*, contra:

The remedy invoked by plaintiff is exclusive. (*Nosser v. Seeley*, 10 Neb., 467; *Pierce Mill Co. v. Koltermann*, 26 Neb., 722; *Kyner v. Upstill*, 29 Neb., 780.)

Irvine, C.

This was a proceeding under section 14 of chapter 57, Compiled Statutes, entitled "Mills and Mill-Dams." The petition was filed by Royce after notice to Newcomb, and it alleged that Royce was the owner and in possession of certain land in Clay county; that in 1888 Newcomb became the owner of other land; that the Blue river, a stream of water with sufficient flow for a mill-dam, traversed both Royce's and Newcomb's land; that Royce's land

lay above Newcomb's; that Newcomb, from the time he obtained his land, operated thereon a mill for the grinding of grain for toll; that for the purpose of operating said mill there had been erected across the river a dam; that Newcomb had raised the dam to a height of thirty inches over and above its former elevation, whereby a portion of Royce's land had been overflowed to the depth of twenty inches, to Royce's damage in the sum of $600; that there had been no proceedings to condemn any land for such mill, or with reference to raising the elevation of said dam, nor had Royce received compensation for his damage. The prayer was for a writ of *ad quod damnum*, an assessment of damages, and judgment therefor. A writ of *ad quod damnum* was issued on this petition. A jury of inquest was struck by the parties, and its return made, assessing Royce's damages in the sum of $420. An answer was filed by Newcomb, admitting the allegations of the petition in regard to the ownership of the two tracts of land, the fact that they were traversed by the river, that Royce's land lay above Newcomb's, and that Newcomb used his land as a mill-site. The answer denied the other allegations of the petition. Then the answer averred that Newcomb had purchased his land of Royce and had paid double its value in consideration of the privilege given him by Royce to raise his dam, and to use all the back water necessary to run his mill; that Newcomb had raised his dam and maintained it peaceably in accordance with the agreement, and that if Royce suffered any damage it "had been fully paid for and fully settled as before stated, and was a right which has been acquired by the purchase and held by the peaceable possession ever since the date of said purchase." There were certain other averments in the answer which need not be noticed. To this answer a reply, in the form of a general denial, was filed. On the issues so made up there was the trial to a jury, the evidence being almost entirely, if not entirely, directed to those issues raised by

averments of the purchase and grant of the water rights exercised. The court by its charge submitted to the jury for its answer a single question, "Has the defendant paid the plaintiff for the damages appraised to plaintiff herein?" The jury answered, "No." Whereupon, after a motion for a new trial had been overruled, the court entered an order ratifying and affirming the return of the jury of inquest, and awarding execution for the damages assessed by that jury. This judgment Newcomb seeks to reverse.

The peculiar character of these proceedings renders it somewhat difficult to apply, in reviewing the case, the rules governing our appellate procedure. An examination of the other cases arising under the mill-dam act shows that the court has always been sensible of this embarrassment. We think, however, that the principal questions presented by counsel have been preserved in such a manner as to entitle them to review. It is contended on behalf of Newcomb that the court erred in submitting the single question of payment to the jury and in withholding the other issues; that when the allegations of damage were traversed the return of the jury of inquest lost its vitality and the case stood for trial on the question of damage or no damage, with the burden resting upon Royce, after the analogy of appeals in ordinary condemnation proceedings. We think this view is substantially correct. The question of the constitutionality of a statute which would leave to the determination of a jury of inquest, selected in the manner provided by this act, the final determination of the value of property taken or damaged by the improvement, and the public utility or necessity of such improvement, is not raised in argument and will not be considered. We do not think a proper construction of the act calls for such an investigation. Section 14, providing for a petition by one claiming to be injured, requires that like proceedings shall be had mutatis mutandis, as where the owner of the dam brings his petition. What are these proceedings? The

first sections of the act provide for calling into action the powers of the court by filing a petition and serving notice. They then provide for impaneling a jury of inquest and its return. Section 11 then provides that "Any defendant may, after the return of the sheriff aforesaid, traverse, by way of answer, any material fact stated in the petition or inquest, or he may plead any valid matter in bar of the plaintiff's right to have the benefit of the writ; or he may file exceptions for substantial defects in the writ, the inquest, or any of the proceedings herein provided for; and issues of law and of fact may be made up and tried as in other cases; and the court may quash the writ, or set aside the inquest, and may award a new writ on payment of all costs by the party who has built, or proposes to build, such mill-dam, or the court may dismiss the proceedings, or may ratify and confirm such inquest." It will be observed that this section permits the defendant, after the return of the writ, to interpose either by exceptions for defects in the proceedings or by traverse or by "plea in bar" to the petition or inquest. In other words, the defendant is bound neither by the petition nor by the inquest. He may put in issue any fact averred or found in either and may have on such issue a trial as in other cases. We do not regard the final clause of the section exclusive as to the form of judgment. It merely indicates what orders the court may make in view of certain determinations of some issues or upon the development of defects in the proceedings. No argument can be drawn against the right to put in issue the question of damages upon the ground that the section does not contain a special provision for the judgment in such case. The other sections of the act do not bear with sufficient directness upon the question to demand detailed discussion; but in so far as they throw any light, it is all in support of the construction we have just placed upon it, to-wit, that the inquest may be traversed with the petition, and if this be done, it loses its force, and the issues formed

must be tried in the same manner and with the same rules as to the burden of proof as in other cases. While this question has not heretofore been directly presented or decided, the opinions in the cases which have arisen under the act all indicate that the court has assumed this as the proper construction of the law. Thus, in *Sutliff v. Johnson*, 17 Neb., 575, the only question presented was as to the *quantum* of damages. These damages had been assessed by the trial jury apparently without regard to the finding of the jury of inquest. This was treated as a correct proceeding. So also in *Pierce Mill Co. v. Koltermann*, 26 Neb., 722, the court treated the question of damages or no damages as properly in issue to the trial jury, where the damages assessed by the trial jury were very different from those found by the jury of inquest. In *Kyner v. Upstill*, 29 Neb., 768, the question of procedure was to a certain extent considered, and adverse comment passed upon the fact that the assignments 'of error related to the proceedings had under the sheriff's writ instead of to the proceedings upon the trial. It was said that the case had proceeded upon the theory that action according to the first thirteen sections of law was necessary to give the court jurisdiction; that the whole of this theory was believed to be erroneous, and the following significant language was used: "Nor does it seem that the verdict of the jury summoned therein by the sheriff advanced the plaintiff's cause in any degree." The court should, therefore, have treated all the material allegations of the petition and findings of the inquest as in issue where met by the denial in the answer. Instead of so doing the following instructions were given :

"1. The question submitted to you to answer arises from the fact that the plaintiff brought proceedings in this court looking to the ascertainment of his damages by reason of the overflow of his land by reason of the erection of a dam across the river known as the Little Blue, in this

county, and such proceedings were had that a jury was impaneled to view the premises and assess the damages of the plaintiff, and such jury reported their findings and assessed damages to the plaintiff in the sum of $420.

" 2. The defendant, as of right he may do, herein filed his answer, in which he alleges that he has paid such damages. This the plaintiff denies. Hence arises the question submitted to you for your consideration, to-wit, Has the defendant W. T. Newcomb paid to the plaintiff the damages assessed to him herein?

"3. Keeping in mind the question submitted to you, consider all the testimony introduced before you, and say from a consideration of all the evidence as to how you shall answer the question submitted to you."

The giving of these instructions is assigned as error. The assignment is to the whole group, and we think the error reaches to all the instructions. As to the second instruction complained of, a single question was presented to the jury instead of all the issues raised by the pleadings. In the first and third instructions the fact that the jury was to confine itself to the consideration of one question was in each suggested, while in the first instruction the fact that the jury of inquest had assessed damages in the sum of $420 was stated to the jury as if it were controlling on that question. We think that each *one of these instructions, viewed in the light of the others, was erroneous and that the joint assignment of error is well taken. Moreover, the question submitted was not proper under the issues. It was practically whether or not Newcomb had paid the damages assessed by the jury of inquest. The question presented by the pleadings and the question tried was whether or not Newcomb, when he purchased the land of Royce, obtained at the same time a grant of the water rights exercised by him. There was evidence fairly tending to show that it was the agreement between Royce and Newcomb that if Newcomb purchased the land at a stipulated price

he should have the privilege of erecting a dam sufficient to properly conduct his mill and to overflow Royce's land as much as would be required for that purpose. If this evidence is to be treated as in support of a claim of license, the erection of the dam and its maintenance by Newcomb coupled the license with an interest and rendered it irrevocable. (*M'Kellip v. M'Ilhenny*, 4 Watts [Pa.], 317; *McBroom v. Thompson*, 37 Pac. Rep. [Ore.], 57.) If the answer be treated as pleading an easement, the expense undergone by Newcomb in erecting his dam in pursuance of the parol agreement took the case out of the statute of frauds. On this subject, then, the precise question for the jury was whether or not there had been such a grant, and not whether the damages allowed by the jury of inquest had been paid.

REVERSED AND REMANDED.