GUST LINDBERG, APPELLANT, v. OSCAR W. CHALLBURG ET AL., APPELLEES.

FILED JULY 9, 1923. No. 22428.

Highways: DRAINAGE: INJUNCTION. "Public authorities may construct drains along the side of highways if necessary to render the road passable. If in so doing they divert the waters of a pond out of the natural course of drainage and upon the lands of one not consenting to the work, they may not, ordinarily, if the work is done in good faith, be enjoined; but they may be liable for damages to persons whose lands or crops are injured." *Wachter v. Lange,* 94 Neb. 290.

APPEAL from the district court for Clay county: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*John B. Scott* and *Epperson, Massie & Epperson,* for appellant.

*W. L. Minor* and *C. L. Stewart,* contra.

Heard before MORRISSEY, C. J., ALDRICH and DAY, JJ., COLBY and REDICK, District Judges.

DAY, J.

By this action the plaintiff sought a permanent injunction against the defendants, who are the county supervisors of Clay county, restraining them from making certain road improvements along the public highway abutting the plaintiff's farm. It is the claim of the plaintiff that the effect of the proposed improvement will be to cast additional surface water upon his land.

Upon the filing of the petition a temporary restraining order was granted by the county judge, which was upon a hearing by the district court continued in force until the trial of the case. Upon the trial of the case on its merits the court dissolved the temporary injunction, denied a permanent injunction, and dismissed the plaintiff's action. Plaintiff appeals.

It appears that the plaintiff is the owner of the northeast quarter of section 5, township 7, range 5, in Clay county. The northwest quarter of section 4 lies immediately east of plaintiff's land. North of sections 5 and 4 are sections 32 and 33. A public highway, popularly known as the "D. L. D.," extending east and west, separates sections 5 and 4 from sections 32 and 33, and a county road running north and south separates sections 5 and 32 from sections 4 and 33. The natural surface of the ground at the intersection of these two highways presents a depression or basin; its lowest point being near the center of the intersection. From the rim of the basin the land slopes from every direction toward the center. This basin has no outlet. The only escape of the surface water is by evaporation or percolation. The rim of the basin which presents an irregular outline is from three to five feet higher than the lowest point in the basin. At times of heavy rainfall or melting snow the surface water forms a pond at the intersection of the two roads which at times seriously interferes with the use of the highways by the public. To remedy this difficulty the highway at the intersection was graded up a trifle over two feet; the grade extending back from the intersection in each direction for a considerable distance. Along

the sides of the highway ditches were dug and culverts constructed in such a manner that the surface water which congregated at the intersection was carried south along the ditches about 600 feet, at which point, when the water in the ditch rose about two feet, it would be discharged in a low place upon the plaintiff's land.

It was charged in the petition that the construction of the roads and ditches in the manner proposed by the defendants would divert the water from lagoons located on sections 32 and 33 onto the plaintiff's land. This charge is not sustained by the evidence. The evidence shows that the only surface water which would be diverted upon the plaintiff's land is the water in the basin having its center at the intersection.

That the improvement contemplated and being carried out by the defendants when the restraining order was served was a necessary improvement for the benefit of the public appears to be well sustained by the evidence. That the defendants were acting in good faith is not questioned. The point at which the water left the ditches and entered upon the plaintiff's land is described by the witnesses as a "swale." From this point the water would spread out in an irregular outline and, after following the low places for some 1,400 feet, it would enter a ditch with well-defined banks which formed a natural drainage for the lands in that vicinity.

A good deal of discussion appears in the brief as to whether this "swale" was the heading of a natural channel. In the view we have taken of the case a number of questions discussed need not be considered. Without expressing any opinion as to the merits of the plaintiff's claim, we are of the view that in seeking an injunction he has mistaken his remedy. The facts in this case bring it within the rule announced in *Wachter v. Lange,* 94 Neb. 290, in which, following the reasoning of *Churchill v. Beethe,* 48 Neb. 87, it is held:

"Public authorities may construct drains along the

side of highways if necessary to render the road passable. If in so doing they divert the waters of a pond out of the natural course of drainage and upon the lands of one not consenting to the work, they may not, ordinarily, if the work is done in good faith, be enjoined; but they may be liable for damages to persons whose lands or crops are injured."

It follows from what has been said that the judgment of the trial court is right, and it is, therefore,

AFFIRMED.