HERMAN WACHTER ET AL., APPELLANTS, V. LOUIS LANGE
ET AL., APPELLEES.

FILED SEPTEMBER 26, 1913. No. 17,283.

1. **Drains:** INJUNCTION: HIGHWAYS: ESTOPPEL. Where a landowner
knew of the placing of tile drains in a highway so as to drain a
pond situated upon the lands of another, and actively assisted in
the work of making drains or ditches upon his own land so as to
conduct the water from the highway ditch over the same, an
injunction will not be granted, years afterward, to enjoin the
maintenance of the tile drains and ditches in the highway for
the reason that in some years more water was discharged upon
his land than he expected, or because the landowner above had
promised to stop the flow of the water at intervals so as to allow
him to farm the land below.

2. ——: HIGHWAYS: REMEDIES. Public authorities may construct
drains along the side of highways if necessary to render the road
passable. If in so doing they divert the waters of a pond out of
the natural course of drainage and upon the lands of one not
consenting to the work, they may not, ordinarily, if the work is
done in good faith, be enjoined; but they may be liable for dam-
ages to persons whose lands or crops are injured. *Churchill v.
Beethe*, 48 Neb. 87.

APPEAL from the district court for Clay county: LESLIE
G. HURD, JUDGE. *Affirmed.*

*H. C. Palmer* and *John C. Stevens,* for appellants.

*J. B. Scott* and *Ambrose C. Epperson, contra.*

LETTON, J.

The plaintiffs, who are separate owners of distinct
tracts of land lying in sections 23 and 26, town 7, range
5, complain that the defendants Lange and Cundall, who
own, respectively, the northeast ¼ of section 23 and the
northwest ¼ of section 24, in the same town and range,
and the other defendants, who are members of the town
board of Sutton township, have by means of certain tile
drains and open ditches drained a lagoon of 60 to 80 acres
in extent lying in the lands of Lange and Cundall, con-

trary to the usual and natural course of drainage, and in such a manner as to divert and throw upon the plaintiffs' land large quantities of surface water that otherwise would not reach the same, thereby causing the loss and destruction of crops and diminishing the value of their premises. They ask an injunction to prevent the maintenance of the drains and ditches. The district court denied the writ.

The making of the drains and ditches is admitted. The right of defendants so to discharge the waters is claimed to exist by way of consent and estoppel, and by virtue of the right of the township authorities to improve the public highway, leaving any one injured thereby to their remedy at law for damages.

It appears that the public road between sections 23 and 24 often became impassable on account of the height of waters in the large depression or lagoon through which the section line ran, and that in 1891, by agreement between one McDermott, who then owned the northeast quarter of section 23, and the road authorities and plaintiff Ebert, a six-inch tile drain was put in to drain the pond along the side of the highway to a slight depression in Ebert's land, whence it might flow to the southwest, eventually reaching a deeper depression on the lands of the other plaintiffs. Ebert testifies that while McDermott owned the land he suffered no damages, for that when he requested McDermott he would stop up the tile and prevent the water coming on his land until he had removed the crop standing thereon, but that Lange, who purchased from McDermott, refused to do this, giving as a reason that the tile was in the public road and he could not interfere; that prior to 1908 he suffered no damages, but that in that year his lands were flooded and his crop destroyed in the portion on which the water flowed. He admits that he and McDermott ran a grader to a depth of about 18 inches across his land and onto the land of plaintiff Wachter in order to facilitate the flow onto Wachter's land. Some of the other plaintiffs testify as to

the condition of the road prior to the time the tile was put in in 1901, and corroborate Ebert as to there being no trouble of any moment until 1908, on account of McDermott closing the tile until their farming work was done.

It is in evidence from their own testimony that plaintiffs Ebert, Buttell and Scheuerman were fully cognizant of the digging of the ditch and placing of the original tiling in 1901, and also of the substitution of the larger tiling in 1904, and made no objections thereto at the time. It is true they all testify that the reason they made no objection was on account of promises made by McDermott, and also for the reason that they were not aware that the placing of the larger tile would make the flow of water so much more rapid that it would injure the crops in the depression through their lands. Testimony on behalf of plaintiff also shows that in 1908 the town board closed the tile drain at the request of one of those farming the land below until he removed his crop, and that when he had finished his work the drain was again opened by the authorities. If a material matter in the case, it might be a matter of some doubt as to whether the depression on the land of Ebert where the water leaves the highway comes within the definition of a natural drainage channel, but, as we view the case, this is not a determining factor.

The conclusion we draw from the whole of the testimony is that the action is not barred by the statute of limitations, as defendants insist, but that the improvement of the highway made the lowering of the level of the water in the pond necessary, and hence the authorities were justified in digging the ditch and laying the tile. *Churchill v. Beethe*, 48 Neb. 87.

Moreover, the conduct of Ebert and others of the plaintiffs in making no complaint at the time, and in actively assisting in the work, places them in a position that a court of equity will not act in their behalf. *Gilmore v. Armstrong*, 48 Neb. 92.

Plaintiff Wachter, however, seems to have been ignorant of the proceedings taken to collect and discharge the water upon his land. No authority has been shown in his tenant, who apparently gave consent, to do so. He may be in a position where he has a right of action for damages for the flooding of his land in 1908 and subsequently, if such has been the case. While a proprietor may have the right declared in *Todd v. York County*, 72 Neb. 207, and in *Aldritt v. Fleischauer*, 74 Neb. 66, to drain stagnant water into a natural drainage channel on his own lands, it has never been declared that he can, against the wishes of another landowner, enter upon his premises to open drains or ditches; or that he can collect and discharge surface water out of the natural course of drainage upon the lands of another.

We think, on the whole case, the district court properly denied the injunction, and its judgment is therefore

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.