JOHN SEVERSON, APPELLEE, V. MARGARET MCKENZIE ET AL., APPELLEES: WILLIAM MCKENZIE ET AL., APPELLANTS.

FILED MARCH 25, 1932. No. 28233.

*A. R. Oleson,* for appellants.

*Zacek & Nicholson, contra.*

Heard before GOSS, C. J., DEAN, GOOD, DAY and PAINE, JJ., and LANDIS and RAPER, District Judges.

GOSS, C. J.

This is a suit to quiet title to two town lots in Wisner, bought by John Severson on January 8, 1929, through partition proceedings. From a decree for plaintiff, Helen M. Oleson and other cross-petitioners appealed. There is little dispute over the important facts. Many of them are stipulated. The partition proceedings were brought by the heirs of James C. McKenzie of Wisner, who had been in actual possession of the lots for many years prior to his death, intestate, on May 13, 1928. His estate, probated in Cuming county, was closed November 20, 1928, and his heirs brought the partition suit January 8, 1929.

James C. McKenzie, Kenneth J. McKenzie and Donald McKenzie were brothers. James lived at Wisner, Nebraska, Kenneth lived at Onawa, Iowa, and Donald lived in Canada. In 1894, while on a visit with his brother James, Kenneth J. McKenzie acquired the property in controversy. Kenneth J. McKenzie died testate on March 18, 1896. On May 19, 1896, his will was admitted to probate in Iowa. On July 14, 1896, an authenticated copy was filed for probate in the county court of Cuming county,

Nebraska, for ancillary administration here, and was subsequently duly admitted to probate. On August 7, 1896, letters testamentary were issued to James C. McKenzie, as executor; no further proceedings were had in said estate after that date. By said will of Kenneth J. McKenzie the property in controversy was devised to James C. McKenzie and Donald McKenzie. It does not appear that the estate owed any debts. It would seem that the purpose of probating the will here was to show its devise of the Cuming county property, being the two Wisner lots.

After the death of Kenneth J. McKenzie and in 1896 or 1897, James C. McKenzie moved a barn upon the lots, fenced them in and continued to use them as a barnyard until his death. He put sidewalks in front of the property, paid all taxes on the lots from 1897 to his death, including $230 paving assessments, was in exclusive possession, and was reputed to be the sole owner. Neither Donald McKenzie nor any one claiming under him had ever made any claim to the property, and James C. McKenzie was testified to have stated that he was the owner.

All of the appellants except Helen M. Oleson claim an undivided one-half interest in the lots as heirs of Donald McKenzie, who died in Canada, August 2, 1897. Helen M. Oleson claims the like interest under a deed from the administrator with the will annexed of the estate of Donald McKenzie. All appellants admit that plaintiff is entitled to an undivided one-half interest in the lots but no more. The Donald McKenzie will was admitted to probate in Cuming county on October 13, 1930, by use of an authenticated copy from the Monona, Iowa, probate proceedings. It may be said generally, as to the terms of the will and for the purposes of this suit, that, if given effect here, the will served as a basis for the assertion of the interests set up by appellants.

The district court expressly held that plaintiff and his predecessors had title by adverse possession, with all of the elements operative in relation thereto, since 1896 or

1897. Appellants challenge that holding on the particular ground that, when James C. McKenzie took possession of the lots, he did so for himself and, as executor, for his brother Donald, both of whom took the real estate under the will of Kenneth, as cotenants. They rely on the general proposition so well stated in *Walter v. Walter*, 117 Neb. 671, that possession by a cotenant is presumed to be friendly and, to become adverse, requires notice that the entire estate is claimed in hostility to cotenants. Plaintiff, on the other hand, claims there was no occasion for James C. McKenzie, as executor, to take possession of these unimproved lots, as there were no rents and profits to collect and no estate debts to pay. Title vested in James C. and Donald, as devisees under the will, subject to claims against the estate. The executor was not required to take actual possession in the circumstances and unless ordered by the court. *Tunnicliff v. Fox*, 68 Neb. 811; *Lewon v. Heath*, 53 Neb. 707. We conclude from all the circumstances that, when James C. McKenzie took possession of the lots, he did so in his own right as a devisee under his brother's will and not as executor.

The general rule is that the possession of one cotenant is the possession of all. So James C. McKenzie's possession was also that of Donald McKenzie, the other devisee, unless and until there was an ouster of the latter. Such ouster may arise from open, notorious and hostile possession under claim of ownership for the statutory period. 1 R. C. L. 742, sec. 62. It is a general rule that, before ouster of a cotenant arises, there must be notice or knowledge, but these "may be inferred from acts or circumstances attending such adverse possession, which are overt, notorious and unequivocal in their character and import. From such acts it is the duty of the other cotenants to be informed thereof and to draw such reasonable inferences therefrom as prudent persons possessed of and interested in like information would naturally do, and such cotenants out of possession cannot prevent the operation of the statute of limitations by proving that they did

not know of the facts affecting their interest, or, knowing of them, did not draw correct conclusions therefrom." 7 R. C. L., 851, sec. 45.

So an ouster of a cotenant out of possession by a cotenant in possession sometimes may, in proper circumstances, be presumed from long and continued and undisturbed possession.

This rule was applied by this court in *Lund v. Nelson,* 89 Neb. 449, the syllabus of which case is as follows: "Where one tenant in common enters upon the whole estate, improves it, takes the profits, pays all the taxes, makes it his home, and claims the whole for more than the period of the statute of limitations, an actual ouster should be presumed, although not otherwise proved."

In *Walter v. Walter,* 117 Neb. 671, this *Lund* case was criticized because of making too general a statement of the rule, although the rule was approved in its application to the facts of the *Lund* case. It is true the decision in the *Walter* case was against a cotenant claiming title by adverse possession. But there was little there in common with the facts here to give notice of a hostile claim on the part of those in possession. As the opinion says: "We find nothing in the character of this possession calculated to give notice of a hostile claim by plaintiffs. The fence existed before the death of Joseph, Sr., and the digging of ditches was not an act of such notoriety as to furnish such notice. It was only such an act as would be done by an ordinary tenant seeking to make profitable use of the land. Moreover, they were dug within the ten year period."

Here James C. McKenzie took possession of two lots of little intrinsic value. (Plaintiff paid $865 for the entire title at referee's sale. Helen M. Oleson's deed called for $500 for an undivided half interest.) He moved a barn and placed it on the lots. He stated that he owned them. He fenced the lots and for more than 30 years exercised openly all the rights of ownership. He paid hundreds of dollars of taxes on the property. This situation distin-

guishes the case at bar from the *Walter* case, and the facts as to the possession here constituted such notice of hostile possession as to do away with any presumption that the possession of James C. McKenzie was for the benefit of his cotenant. If these acts were such as would put a man of ordinary prudence upon guard or inquiry, they are sufficient under the discussion in the *Walter* case, which said: "This notice need not be direct and positive, but may be inferred from acts of the tenant in possession, in hostility to the title of his cotenants, of such an open and notorious character as would put a man of ordinary prudence upon his guard. Acts of the tenant, however notorious, which are reasonably consistent with the existence of title in his cotenants are not sufficient, they must be hostile and of such a character as would put a reasonable man, aware of his rights, upon inquiry."

We call attention to another rule which we think may well be invoked. "Courts of equity have inherent power to refuse relief after undue and inexcusable delay independent of the statute of limitations." *Hawley v. Von Lanken,* 75 Neb. 597. This followed the opinion of the supreme court, by Mr. Justice Harlan, in *Abraham v. Ordway,* 158 U. S. 416, in which he said: "Independently of any limitation for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done in the particular case by granting the relief asked."

Here appellants waited more than 20 years after the expiration of an ordinary time of limitation. They knew or should have been aware that for nearly a generation there had been no action in the proceedings to complete the probate of the will under which they claim, had been no income from the property devised, and no report concerning it. Altogether we are satisfied that the district court made the right disposition of the controversy by its decree for plaintiff. The judgment is

AFFIRMED.