KATHERINE H. FITZSIMMONS, APPELLEE, V. HUBERT GILMORE ET AL., APPELLANTS.

278 N. W. 262

FILED MARCH 4, 1938. No. 30249.

*John F. Rohn,* for appellants.

*Robins & Yost, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

EBERLY, J.

This is a suit in equity to enjoin defendants from removing certain water and sewer pipes, which, in 1906, had been installed by plaintiff's predecessors in title in and across the church grounds of defendants, and which, in 1936, under the authority and direction of such defendants, had been in part removed and in part destroyed.

Plaintiff, by her pleadings, asks for a complete restoration of the *status quo* as existing prior to this interruption and for recompense for injuries suffered thereby. Defendants joined issue by general denial, and, in addition, pleaded affirmatively certain facts, and prayed also for denial of plaintiff's prayer for relief, and "that plaintiff be required to remove all water and sewer pipes from the defendants' property forthwith, or in the alternative that the defendants be permitted to remove all of said pipes and other property belonging to plaintiff from the defendants' property described herein, and that the plaintiff be enjoined from placing or attempting to place any water or sewer pipes upon or under any portion of the defendants' property above described."

Trial was had which resulted in a finding and judgment for plaintiff. Defendants appeal.

The pleadings, in connection with the evidence, disclose that plaintiff and her predecessors in title had, for more than thirty years, owned and occupied the north half of lots 5 and 6 in block 93 of the original town (now city) of Fremont, Nebraska; that the defendant corporation during the same period owned and occupied the south half of the same lots; and that during the same period the city water mains and public sewer had been continuously maintained along the public street paralleling the south boundary of defendants' lots. It also appears, without substantial contradiction, that the sewer and water pipes in

suit were originally emplaced and laid from these water and sewer mains by a licensed plumber of the city of Fremont in and across the south half of lots 5 and 6, then owned and occupied by defendant church, pursuant to an official permit granted by municipal authority on March 31, 1906, and said water and sewer pipes terminated at and were connected with a dwelling-house situated on the north half of the described lots. Part of this improvement was a stop box placed near the intake from the city water main, and a grease trap situated south and east of the residence of plaintiff, both at all times in plain view. This permit was secured by plaintiff's predecessors in title then residing in the dwelling-house last referred to. The improvement was made under the authority and direction of plaintiff's predecessors in title, and was completed on July 2, 1906, on which date it was left by the constructing plumber with "the water left turned on." Plaintiff alleges that these acts were performed and authorized by a consent in writing of the defendant church, and also by oral consent thereof duly given. From and after their installation until the summer of 1936, substantially without interruption, these water and sewer pipes continuously performed their essential functions for plaintiff and her predecessors in title occupying the residence herein referred to. In 1920-1922, the exact date not being definitely stated, plaintiff testifies that she employed a plumber who went upon the church property and made excavations thereon for the purpose of repairing the pipes. During the thirty-year period, the record is silent as to objections or protest of defendants as to construction, maintenance, or continuation of this improvement across the church land of defendants. The evidence in the record tends to support the inference that knowledge of the existence of these water and sewer pipes beneath the surface of the church grounds had been, by lapse of time, wholly lost to those charged with the transaction of the church's business and the care of its property. In October, 1936, in making excavations on their lands for improvements of their religious edifice,

the workmen employed by defendants, and those engaged in that work, came in contact with the pipes in suit, and severed and in part removed them. This was done without plaintiff's consent. Negotiations were had between the parties to this suit, the ultimate termination of which was an election on part of defendants to terminate all rights which plaintiff might possess in their premises, and in pursuance to such election an unconditional demand was made upon plaintiff to remove from defendants' premises the pipes and improvements in suit, but no compensation was paid or tendered to plaintiff. The present suit is brought by plaintiff to establish and perpetuate rights which, for thirty years, had been uninterruptedly enjoyed by plaintiff and those through whom she derived her possession. The defendants' contention is that no rights have ever been conferred by them upon any one, save by "a mere oral license," revocable by its inherent nature, and which has been duly revoked, and the affirmative relief which defendants demand is predicated on that fact.

While the pleadings designate Fitzsimmons as plaintiff and the Christian Church and its officers as defendants, yet the form as well as the substance of the issues disclose that both are "moving parties," asking affirmative relief. Indeed, it must be admitted that the first attack on the *status quo* which had continued thirty years was made by the defendants. By their forcible action taken, they had created a situation which rendered the litigation inevitable. The applicable maxim is, equity looks through forms to substance.

Without reference to the correctness of the name by which defendants' pleading is designated, the situation invokes the rule that, while the burden of proof is generally on the plaintiff, still, "Where a defendant pleads an affirmative defense or sets up in his answer facts in avoidance, the burden of proof is upon him. So, too, the burden of proving allegations in a cross-bill necessary to entitle defendant to affirmative relief rests upon him to the same extent as if he had brought an original action." 22 C. J. 74.

. Lydia Gaeth, a witness, testified that she was married to Otto Gaeth on April 15, 1906; that, March 1 preceding, the construction of their residence on the north half of the lots (on the south half of which the church property is located) began; that the details of making that improvement were carried out by her husband; that the ditches were excavated across the church property and remained open several days; that the water and sewer pipes were laid therein by a plumber hired by her husband, and were in due time closed up.

While Mrs. Gaeth was not able to qualify as a competent witness as to the arrangement made with defendant church covering the placing of the pipes in the church ground, and her testimony on that subject was stricken out as hearsay, it is quite obvious, in the light of the surroundings, that such pipes were installed openly, under a claim of right, and paid for by her husband; and the use of the water and sewer system continued uninterrupted and without protest from any one, for the three and a half years during which she and her husband occupied these premises as their home. In fact, both parties allege, in substance, that the water and sewer pipes were laid in their present position, under a license and permit, by plaintiff's predecessors in title, but no competent evidence has been introduced by either party as to the consideration given, whether the permission or grant was oral or written, or what the terms and conditions of the same were. Mrs. Gaeth's evidence is also that her husband who owned the property and personally looked after all the details of this building died in 1931. This man, in view of the situation established by the evidence, necessarily possessed complete knowledge of the transaction that resulted in putting in improvements, including the rights, if any, the extent of the same, and the manner and method by which they were obtained from the defendant church in 1906. Mrs. Gaeth could not now state the names of the board officers of defendant church as constituted in 1906. It is also established by uncontradicted evidence that a plumber employed by plain-

tiff, a Mr. Fletcher, repaired the water system across the church premises about a year or two after Armistice Day (1919), and that for that purpose excavations were made in the church yard; but that this man had left Fremont some years ago, and his whereabouts were at the time of the trial unknown. It appears without serious question that the occupants of this residence property continuously enjoyed the water and sewage system installed in and across the church premises, without interruption, for thirty years last past.

So, also, defendants' pleading setting forth that the water and sewer pipes were laid in their present situation by plaintiff under a license or permit granted by the defendant church, and alleging the limitations and conditions, fairly established as a fact that action for that purpose was actually had by the appropriate church authorities prior to the installation of this improvement in 1906. In the natural and regular course of business a church record made substantially contemporaneously would evidence the action taken. If, through inadevertence, no such record was actually made, or if originally made it had been, in the course of thirty years, lost or destroyed, then the actual participants in granting such permit, who were presumably members of the defendant corporation, if still living, would doubtless be able to establish what was done by competent parol evidence. At all events, this proof, whether found in the private corporate records of the church, or within the memory of its membership, was peculiarly within the possession of defendants. But, though definite and positive allegations covering these matters are set forth in defendants' pleading, we find they tender no evidence in support thereof as to the matters here discussed.

In view of the entire record, considered in connection with the time that has elapsed since 1906, it would seem that the application of the following principles is invoked, viz.:

"In the administration of justice it is often wise to

place the burden of producing evidence on the party best able to sustain it, and ambiguity, concealment, or evasion react with peculiar force on a pleader who asserts a fact and fails to produce the evidence, which, if his assertion were true, would be in his possession. Hence it is very generally held that where the party who has not the general burden of proof possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called upon to negative, or where for any reason the evidence to prove a fact is chiefly, if not entirely, within his control, the burden rests on him to produce the evidence." 22 C. J. 81.

Whatever the actual extent of plaintiff's rights may in fact be, they have been vested for thirty years. They are not executory, but executed. It appears that defendants never questioned the use made of their premises until the three decades had fully elapsed. In the natural course of events, evidence that once existed is not now obtainable. Three persons, who, if alive, would be important witnesses in this case, have, according to the evidence, departed this life. This action is one in equity. Plaintiff asks only that the *status quo* be continued as it has existed for thirty years. Defendants ask for restoration as the situation was in 1906 and prior thereto.

But, "Equity regards stale claims with disfavor and long lapse of time, unexplained, even when not of itself a bar to relief, operates by way of evidence against the justice of the right asserted, and not only subjects plaintiff's case to severer scrutiny than it would otherwise receive, and exacts of him a higher degree of proof than would otherwise be required, but moves the court to look with more indulgence on the evidence adduced by defendant. Long lapse of time, if unexplained, may create or justify a presumption against the existence of validity of plaintiff's right and in favor of the adverse right of defendant; or a presumption that if plaintiff was ever possessed of a right, it has been abandoned or waived, or has been in some manner satisfied, or that plaintiff has assented to or ac-

quiesced in the adverse right of defendant; or a presumption that the evidence of the transaction in issue has been lost or become obscured, or that conditions have changed since the right accrued, and that in consequence the adverse party would be prejudiced by its enforcement." 21 C. J. 226.

In the discussion of this question, another text states, in part: "Where important evidence in behalf of the defendant has been lost during the delay of the complainant, he will generally be barred from relief. The loss may result from the death or incapacity of some of the witnesses. Again, the delay may be so long that under the circumstances many of the important facts have become obscured. To allow a complainant relief in such cases would frequently risk a great hardship to innocent parties. Consequently, the courts decline to interfere." 4 Pomeroy, Equity Jurisprudence (4th ed.) p. 3425. And, see, also, note 68 appearing under the foregoing text, p. 3425.

Then again, "It is an ancient and well-settled doctrine of the common law that a mere license, whether by deed or by parol, is revocable at pleasure." 17 R. C. L. 576, sec. 89. But, to this rule there always has been two recognized exceptions, viz.: Where the license is executed, and where by reason of the expenditures by the licensee on the strength of the license, it would otherwise be inequitable to permit the licensor to effect a revocation. 17 R. C. L. 576, sec. 89.

Thus it was that, "in an action on the case," recovery was denied where the area which belonged to the defendant's house had been inclosed and covered by a skylight placed above the plaintiff's window by means of which the light and air were prevented from entering plaintiff's window, but with the express consent and approbation of plaintiff obtained before the inclosure was made, and plaintiff also gave leave to have part of the frame-work nailed against his wall. But some time after it was finished plaintiff objected to it and gave notice to have it removed. *Winter v. Brockwell*, 8 East, 308. In the last-cited case,

Lord Ellenborough, C. J., stated that the license given by the plaintiff to erect the skylight having been acted upon by defendant, and expenses incurred, could not be recalled and the defendant made a wrong-doer, at least without putting him in the same situation as before by offering to pay all the expenses which had been incurred in consequence of it. See, also, *Woodbury v. Parshley,* 7 N. H. 237, 26 Am. Dec. 739; *LeFevre v. LeFevre,* 4 Serg. & Raw. (Pa.) *241; *Giles v. Simonds,* 15 Gray (Mass.) 441, 77 Am. Dec. 373.

On this record defendants contend that the rights possessed by plaintiff are revocable, "at the will of the licensor, whatever expenditures licensee may have made; provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements." This wholly ignores the situation created by the lapse of thirty years as disclosed by the evidence in this case. These facts and conditions, fairly established, appeal strongly to the conscience of a court of equity for the continued maintenance of the *status quo,* after important witnesses are dead and the essential elements of the original transaction are vague and undetermined by the proof.

We have carefully considered the discussion of certain Nebraska cases by defendants in their brief, and in learned argument at the bar of this court. We do not find defendants' contention convincing. Besides, for more than a quarter of a century these cases have announced a principle which at this time constitutes a rule of property in this state.

From these authorities, so discussed by defendants, we deduce the conclusion that, even if the original license granted by defendant church to plaintiff's predecessors rested wholly in parol, the open entry on the church premises by the licensee (pursuant to and in conformity with the terms of such license and with actual knowledge of the licensor), the constructing of the improvement here in suit, substantial in material and permanent in plan, at the sole cost of the licensee, followed by thirty years un-

disturbed use, under the facts disclosed by this record, render such license wholly irrevocable. *Arterburn v. Beard,* 86 Neb. 733, 126 N. W. 379; *Gilmore v. Armstrong,* 48 Neb. 92, 66 N. W. 998; *Johnson v. Sherman County Irrigation, Water Power and Improvement Co.,* 71 Neb. 452, 98 N. W. 1096; *Severson v. McKenzie,* 122 Neb. 827, 241 N. W. 774; 2 Tiffany, Real Property (2d ed.) p. 1208.

It follows that the judgment of the district court and its decree as entered are approved.

AFFIRMED.