FRANK J. MAGNUSON, ALSO KNOWN AS F. J. MAGNUSON, ET AL., APPELLEES, v. LEO LLOYD COBURN ET AL., APPELLANTS.

46 N. W. 2d 775

Filed March 16, 1951. No. 32898.

*Anderson, Storms & Anderson,* for appellants.

*Richard E. Person,* for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-PELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Frank J. Magnuson and Sarah F. Magnuson brought this action in the district court for Phelps County against Leo Lloyd Coburn and Theresa Coburn. The purpose of the action is to establish plaintiffs' right to a road across defendants' premises and to permanently enjoin the defendants from interfering with plaintiffs' use thereof. The trial court found generally for the plaintiffs, quieted in them an easement for the use of a road across defendants' property, and permanently enjoined the defendants from interfering with the plaintiffs' use thereof. Defendants filed a motion for new trial and, from the overruling thereof, appealed.

This action being equitable in its nature the record will be considered de novo. § 25-1925, R. R. S. 1943. See Eirich v. Ostwald, *ante* p. 8, 46 N. W. 2d 686.

The road sought by appellees is across Lot 5 in Block 7, Fourth Addition to Holdrege, Phelps County, Nebraska. Lot 5 is owned by the appellants. The road across Lot 5 is definitely fixed by the decree of the trial court as to location, size, right to maintain, and use. If the appellees are entitled to the road, we find the trial court's decree correctly defines its location and size, together with the extent of the appellees' right to maintain and use it.

Lot 5 is a part of the west half of Block 7, Fourth Addition to Holdrege. The west half of Block 7 consists of six lots which run numerically from north to south and face west on Sheridan Street. They are numbered from 1 to 6, inclusive, and each lot is 140 feet long and 50 feet wide. To the north is Fifth Avenue, to the south is Fourth Avenue, to the west is Sheridan Street, and to the east is an unimproved alley 20 feet wide. Fourth Avenue, Sheridan Street, and Fifth Ave-

nue are all paved. Fourth Avenue is also U. S. Highway Nos. 6, 34, 183, and 383. The road involved crosses the east part of Lot 6 from Fourth Avenue. It then runs north across Lot 5 and onto and over Lots 4, 3, 2, and 1. Located to the west thereof on Lot 6 is a filling station. It was erected in 1926. Located on Lots 1, 2, 3, and 4 is a cabin or tourist camp owned by appellees. This camp consists of 11 modern cabin units and 13 trailer spaces. It is adaptable for and operated on a year-round basis.

This cabin camp and the road had its origin sometime shortly prior to January 8, 1926, when the appellee Frank J. Magnuson, hereinafter referred to as Magnuson, met Mr. and Mrs. Walter E. Brown in Lexington, Nebraska. Walter E. Brown, who will hereinafter be referred to as Brown, is a nephew of Magnuson. This meeting resulted in a tentative agreement to operate a cabin or tourist camp and a plan to form a partnership for that purpose. As a result of this meeting Brown bought Lot 5 and the appellees bought Lots 3 and 4, all in Block 7. Both deeds are dated January 8, 1926. All of the west half of Block 7 was then a pasture. Appellees, who were then living in Dawson County, had a sale and, on February 15, 1926, moved to Holdrege.

Magnuson and the Browns then agreed to the location of the camp and road, which road is now located in the same place as then agreed upon. However, Brown discovered he did not have enough money to go into the cabin or tourist camp business and consequently the partnership was never actually formed. Brown proceeded to put a garage on his lot. It was placed on the northeast corner thereof. He, being a mechanic, operated a car repair shop therein for some years. He also built his home on the west end of his lot and a small store building on about the south center thereof. These improvements were all made in 1926. The road across Lot 5 is located between the garage and the store and is in the shape of a Y. Magnuson immediately started building a cabin camp on Lots 3 and 4. Without

further consulting Brown he laid out a road across Lot 5 and on his lots. This was done in 1926. The road was put where the parties had agreed it should be. The Browns made no objection to his putting it there. Later, in 1936, Magnuson became the owner of Lots 1 and 2. He then extended both the road and camp onto these lots.

Brown operated the garage for some years but moved away in 1933. Thereafter he rented his property. Appellants rented it in 1938 and moved there in February of that year. Later, on February 16, 1944, they bought it. They have lived there ever since moving into the property in February 1938.

As already stated, Magnuson originally laid out this road across Lot 5 where it had been agreed upon by himself and the Browns it should be located. When he laid out the road he did so with a grader. He laid it out clear across Lot 5. The Browns made no objections to his doing so. He graded it part way, making a ditch along the edge with the grader and leveled off the balance. Since then he has improved and maintained it. At the present time it is graveled. All this he did at his own expense. The road has always been used in connection with the tourist camp and is the main entrance thereto. Magnuson built up his camp in relation to this road. He has invested some $18,000 therein. It is now reasonably worth about $25,000.

While there are other ways of ingress and egress to his camp; one being from Sheridan Street onto the southwest corner of Lot 4, another being from Fifth Avenue through the alley onto the east side of Lots 1 and 2, and possibly a third from Fifth Avenue onto the north side of Lot 1, however, the main and only practical way into and out of the camp is the road over and across Lot 5.

The appellees' use of this roadway continued without interference or interruption by anyone from the time it was laid out and opened for use in 1926 until April 11, 1950. On that date the appellants put a fence along

the north line of their property. This fence completely shut off the appellees' use of the road. Under the circumstances, as herein set out, can the appellants now revoke the license or permit which their predecessors in title had agreed to?

It should here be stated that the appellees claim the right to use this road by virtue of the original agreement with the Browns. There is nothing in the record to show that in their original agreement the parties thereto came to any understanding as to how long the appellees should have the right to use this road. It was apparently never discussed.

Admittedly the use of this road by appellees was at all times known to appellants as it was open and visible. In fact, Mrs. Coburn operated the camp in 1946 when the road was in use. We held in Arterburn v. Beard, 86 Neb. 733, 126 N. W. 379, as follows: "One who purchases land burdened with an open and visible easement is ordinarily charged with notice that he is purchasing a servient estate." And as stated in Moll v. Hagerbaumer, 98 Neb. 555, 153 N. W. 560: "If plaintiff had an easement, it was open and visible to defendants when they purchased the servient estate. They were, therefore, chargeable with notice of plaintiff's roadway right, if any. Arterburn v. Beard, 86 Neb. 733."

While this road is not the only possible way of getting into and out of the camp it is apparent, from the record, that the business will be seriously damaged, if not destroyed, if the road is completely closed. It is necessary to the successful operation of the camp. In this respect what we said in Agnew v. City of Pawnee City, 79 Neb. 603, 113 N. W. 236, is particularly applicable here. Therein we said: "Neither can it be claimed that the easement was not necessary to the enjoyment of the estate. The back stairway did not provide sufficient ingress and egress to the second story. After the stairway in controversy was removed, the owners of the building were unable, for this reason, to rent the rooms

on the second floor, and it is clear that a stairway leading from the second story to the main street was necessary to the proper enjoyment of the estate. See Simmons v. Cloonan, 81 N. Y. 557; Charleston, C. & C. R. Co. v. Leech, 33 S. Car. 175, 26 Am. St. Rep. 668."

Here the road was laid out, maintained, and improved at the sole expense of appellees in reliance on the agreement had with the Browns. In addition thereto appellees spent large sums of money building a tourist or cabin camp in reliance thereon to which this road is the only practical means of access. Without this road appellees' investment will be seriously impaired, if not totally lost. We think the question herein involved has been settled by this court by the case of Fitzsimmons v. Gilmore, 134 Neb. 200, 278 N. W. 262.

The issue therein is stated as follows: "This is a suit in equity to enjoin defendants from removing certain water and sewer pipes, which, in 1906, had been installed by plaintiff's predecessors in title in and across the church grounds of defendants, and which, in 1936, under the authority and direction of such defendants, had been in part removed and in part destroyed."

The court therein went on to say: " 'It is an ancient and well-settled doctrine of the common law that a mere license, whether by deed or by parol, is revocable at pleasure.' 17 R. C. L. 576, sec. 89. But, to this rule there always has been two recognized exceptions, viz.: Where the license is executed, and where by reason of the expenditures by the licensee on the strength of the license, it would otherwise be inequitable to permit the licensor to effect a revocation. 17 R. C. L. 576, sec. 89."

We therein held: "From these authorities, so discussed by defendants, we deduce the conclusion that, even if the original license granted by defendant church to plaintiff's predecessors rested wholly in parol, the open entry on the church premises by the licensee (pursuant to and in conformity with the terms of such license and with actual knowledge of the licensor), the constructing of

the improvement here in suit, substantial in material and permanent in plan, at the sole cost of the licensee, followed by thirty years undisturbed use, under the facts disclosed by this record, render such license wholly irrevocable. Arterburn v. Beard, 86 Neb. 733, 126 N. W. 379; Gilmore v. Armstrong, 48 Neb. 92, 66 N. W. 998; Johnson v. Sherman County Irrigation, Water Power and Improvement Co., 71 Neb. 452, 98 N. W. 1096; Severson v. McKenzie, 122 Neb. 827, 241 N. W. 774; 2 Tiffany, Real Property (2d ed.) p. 1208." See, also, Majerus v. Barton, 92 Neb. 685, 139 N. W. 208.

The basis for this rule is stated in 3 Tiffany, Real Property (3d ed.), c. 15, § 834, p. 416, as follows: "Accordingly, the decisions that a license cannot be revoked after the making of improvements on the faith thereof appear properly to involve merely the assertion of a rule of construction, that an oral permission to make a particular use of land, which use is such that it will be necessary or desirable to make expenditures in order to avail oneself of the permission, is to be construed as an attempt orally to grant an easement in the land, which is absolutely invalid as a grant, but operates by way of equitable estoppel in favor of the intended grantee if he subsequently makes expenditures on the assumption that he acquired an easement thereby, although, as a matter of fact, he originally acquired, by reason of the invalidity of the grant, merely a license."

Having come to the conclusion that the appellees are entitled to the relief they seek we affirm the decree of the trial court.

AFFIRMED.

MESSMORE, J., participating on briefs.