FRANK D. KEIM ET AL., APPELLANTS, V. WILLIAM F. DOWNING ET AL., APPELLEES.

59 N. W. 2d 602

Filed July 24, 1953. No. 33313.

*Max Kier*, for appellants.

*C. J. Campbell* and *Fraizer & Fraizer*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellants brought this action against appellees to restrain them from having and maintaining a private road and ditch which appellants alleged obstructed and diverted the natural flow of surface waters from their land in such a manner as to throw the water back onto it to their damage; and that the surface waters, except for the obstruction and diversion would in the natural course of drainage have gone from the land of appellants onto and across the land of appellees. Appellants also sought to recover damages for injuries to their land because of the obstruction and diversion of the sur-

face waters by appellees. Appellees denied the claims of appellants, and alleged that the road and ditch complained of by appellants were constructed and maintained by virtue of an agreement between the parties; that for many years appellants had used the drainage provided by the ditch; that they had accepted the benefits of the better drainage of their land afforded by the road and the ditch; that by word and conduct they granted an easement or irrevocable license for the maintenance of the ditch and road; and that they were estopped to have them removed or to recover damages.

The district court found against appellants on their causes of action, in their favor on the cause of action alleged by appellees in their counterclaim for damages, dismissed the case, and denied the motion of appellants for a new trial.

The decision of this case is controlled by the determination of questions of fact. This is an equity case. The evidence is conflicting and in many important respects irreconcilable. The trial court made an inspection of the premises and physical matters involved. The manner of conducting a trial in this court in this situation has been firmly established. It is the duty of the court to try the issues de novo and to reach an independent conclusion without being influenced by the findings of the district court except to the extent the evidence is in irreconcilable conflict, and as to that the court may consider the fact that the trial court saw the witnesses, observed their manner of testifying, and accepted one version of the facts rather than the opposite. Likewise this court may and should give proper consideration to the fact that the trial court inspected the premises and the physical matters involved, and that its examination constituted evidence because the relevant facts observed necessarily affected the mind of the trial court and tended to influence belief or unbelief on the matters at issue in the case. Probert v. Grint, 148 Neb. 666, 28 N. W. 2d 548; Birdwood Irr. Dist. v.

Brodbeck, 148 Neb. 824, 29 N. W. 2d 621; Jack v. Tee-garden, 151 Neb. 309, 37 N. W. 2d 387; Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129.

Appellants were the owners of the northeast quarter and appellees were the owners of the southeast quarter and the east half of the southwest quarter of Section 23, Township 11 North, Range 7 East of the 6th P. M. in Lancaster County. Appellants asserted that the southeast quarter of the section was first bottom land near Salt Creek and was servient to drainage from their land; that the natural drainage of surface and flood waters from the west and northwest of their land flowed through natural drainage courses onto and across it; and that from time immemorial have so flowed from the north and west in a southeasterly direction to, on, and across the land of appellees and into Salt Creek. Appellees denied the assertions of appellants and alleged that the drainage of surface waters upon the land of appellants from the northwest and from higher land to the west entered near the northwest corner of their land; that the waters were diffused and followed a natural grade in a southeasterly direction over and across the land of appellants to the southeast portion thereof and from there onto the public highway to the east, except a part of the waters remained in a swampy depression in the southeast corner of the land of appellants; and that in the natural course of drainage none of the said surface waters came to or entered upon the land of appellees.

In the primitive state of the area important to this litigation there was a drain from the northwest that entered the land of appellants near its northwest corner and extended into the land towards the south and slightly towards the east for about 600 feet. There was another drain that crossed the section line about 30 rods west of the one above mentioned. It came from the northwest, but more from the west than the north, and entered the land of appellants about 30 rods south

of the northwest corner thereof and continued in a south-easterly direction until it joined the first draw about 600 feet from the north line of the land. The drain formed by the confluence of the two draws extended in an irregular course slightly towards the southeast until it was about midway of the land of appellants from north to south; and it then flattened out and substantially disappeared.

The draws, after a road was opened on the section line, had bridges over them. The east one was 12 feet long and the waterway below the stringers of the bridge was about 5 feet in depth. The bridge over the west draw was 8 feet long and the depth of the waterway was about 4 feet. The area drained by them was not less than a section of land. The combined area of the waterway under the bridges was between 80 and 90 square feet. It was many times insufficient to contain all the water flowing through the draws and overflow of the bridges and road was not unusual.

At the place where the drain lost its identity as above indicated the surface water passing through it spread out over the land. It became and was diffused surface water. When it was sufficient in volume to flow across and off of the land of appellants it crossed the east line near to and north of the southeast corner into, across the highway, and thereafter followed a northerly and northeasterly course about parallel with Salt Creek for a mile or more and finally entered Salt Creek.

The allegations of appellants that the land of appellees was servient to drainage from land of appellants and that the natural drainage of surface and flood waters from the north and west of and from their land was in a southeasterly direction across the land of appellees and thence into Salt Creek are contrary to the evidence. The finding is that in the natural course of drainage the waters referred to above did not come to, enter upon, or burden the land of appellees.

It was stated in the petition that appellees went upon

the land of appellants and excavated a ditch about 3 feet deep from the southeast corner thereof for a distance of about 1,000 feet to the west; that the earth taken from the ditch was used in the construction of a road about 1,300 feet in length from the public highway on the east of the land of appellants westerly to the residence and farm buildings on the land of appellees; that the road was immediately south of and adjacent to the ditch; that the road constituted a dike which obstructed and diverted surface waters from flowing across the land of appellees as it would have done in the natural course of drainage; that it resulted in them being held back and retained on the land of appellants; that it caused them to flow in a course and different direction than they would have done naturally; and that the waters eroded a deep ditch along the south side of the land of appellants.

The defense of appellees in this regard was that appellants acquired their land in 1942; that there was no watercourse thereon; that the surface waters moved in a diffused condition from the northwest to the southeast and from the land over the highway to the east and northerly and northeasterly until it flowed into Salt Creek; that appellants by the use of machinery excavated an artificial channel and made an embankment to the east thereof across their land from the northwest part in a southerly direction to a point about 400 feet east of the residence and farm buildings on the land of appellees; that the channel and embankment traversed the eastward flow of surface waters on the land of appellants from the north and northwest and it accumulated and conducted the waters away from the swampy depression in the southeast part of their land onto and over the private road and the land of appellees to the east of their residence and improvements; that the channel and embankment greatly improved the drainage of the land of appellants by accumulating, confining, and accelerating the flow of surface waters therefrom; that

in 1944 the surface waters came down the course of the constructed channel in great volume upon and from the land of appellees, washed out and destroyed their private road, flooded, eroded, covered with debris, and greatly damaged the northeast portion of their land; that the drainage facilities constructed by appellants were the sole cause thereof; that appellees advised appellants that they intended to bring suit against them for an injunction and damages because of their wrongful acts as stated above; that appellants sought a compromise and settlement with appellees and suggested the construction of a drainage ditch on the boundary line between the lands of the parties from a point east of the farm buildings of appellees to the public highway east of their land and the use of the excavated dirt to rebuild the private road immediately south of the ditch and extending west to the buildings; that appellees accepted the plan, waived the action for injunction and damages, and the ditch and road were constructed and have since been used by all of the parties; that appellants have since accepted without complaint or objection the existence of the road and ditch and the use of the ditch to carry away the waters diverted, accumulated, and accelerated by the artificial drainage constructed on their land; that the swampy portion of the land of appellants has been drained and benefited thereby; and that they are estopped because of said facts to seek to restrain the maintenance of the ditch and road or to claim damages.

There was no ditch or conservation work done on the land of appellants before they became the owners of it in 1942. There was then no watercourse, ditch, or drain on the south half of the land. The United States Soil Conservation Service made a soil conservation plan for the farm of appellants in the early part of 1943. The sole purpose of the plan was to benefit this farm. The drainage of the surface water from it was one of the principal features of the plan. A ditch was made that

year across the land from the northwest to the south line at a point a short distance east of the buildings of appellees. The area to the east of the ditch was planted to corn. It was put in with a lister. The rows paralleled the ditch and they were made deep. The year before the corn rows were east and west.

The soil conservation service in the spring of 1944 graded out a channel from the northwest corner on the farm of appellants for at least three-fourths of the distance to the south boundary of the land. Large and powerful machinery was used in the operation, including a 40-horsepower Caterpillar tractor and a grading machine called a "blade." The ditch as it then existed was made wider, deeper, and straighter, and the excavated dirt was put to the east thereof. The southern quarter of the ditch across the farm was not increased because "the capacity seemed to be adequate." The purpose and result of the work done were to make the water flow where it would not do so naturally, to confine it to a smaller area, to collect it in a channel or ditch, to accelerate its flow from the farm, and to deposit it at the border of the land of appellees at a location it never would have reached in natural flow as surface water. The work done on the land by the soil conservation service had to do solely with the drainage and it was specifically done to improve the drainage of surface water from it. The area over which the surface water spread at the time the work was done was at least 200 feet in width. The ditch constructed thereon was 6 to 8 feet wide. The construction and maintenance of the artificial ditch for drainage of surface waters from the land of appellants to and over the land of appellees was a legal wrong. Surface water is a common enemy and an owner of real estate may fight it as his judgment dictates, but an upper proprietor may not collect it in a drain, accelerate its flow, and discharge it on a servient estate or divert it in a different direction to the damage of the lower estate. If surface water flows in

a certain course in its primitive condition it cannot be arrested or diverted in a different direction or otherwise interfered with to the injury of another land owner. Bussell v. McClellan, 155 Neb. 875, 54 N. W. 2d 81, on rehearing, 156 Neb. 189, 55 N. W. 2d 606; Schomberg v. Kuther, *supra;* Hengelfelt v. Ehrmann, 141 Neb. 322, 3 N. W. 2d 576; Todd v. York County, 72 Neb. 207, 100 N. W. 299, 66 L. R. A. 561.

In the summer of 1944 after the ditch had been enlarged on the land of appellants by the soil conservation service water passing through it ran onto and destroyed the private road of appellees from a point opposite the south end of the ditch to the public highway on the east. The water cut a channel where the road had been. Water from the ditch went over, carried debris upon, eroded, and damaged the northeast portion of the land of appellees.

Thereafter Mr. Downing declared his determination to bring suit against appellants because of their ditch and the damage done appellees by the water accumulated and diverted by it. The situation was discussed and it was arranged, after consultation with and in the presence of the county engineer, that a ditch should be made on the quarter section division line between the lands of the parties from the south end of the ditch constructed on the land of appellants to the public highway to the east; and that the dirt excavated from the ditch should be used to rebuild the private road of appellees and, because they were to have the benefit of the road, they agreed to pay and did pay the cost of the work which was done with county equipment. The county engineer was consulted and concerned because of the effect of the drainage on the public highway. The tenant of appellants assisted Mr. Downing in the removal of the fence on the quarter section line where the new ditch north of the private road was to be made and shortly thereafter the work was done and the ditch and road have since 1944 existed at that location. This

was all done with the knowledge of appellants without objection or protest until this suit was commenced. Appellants have maintained and have improved at various times since, the drainage ditch across their land and the water therefrom has gone into the ditch north of the private road, across the highway, and thence into Salt Creek. Their land has been greatly benefited thereby. The only protest or objection made by them during the many years until the bringing of this suit was in reference to work done in 1948 or 1949 for the improvement of the public highway east of the land of the parties to this case. The only injury appellants complained of was caused by the improvement of the public highway in which appellees had no part and for which they had no responsibility.

The plan of these parties for drainage improvement at their common boundary, based on a consideration, fully executed, accepted, and utilized by each for many years was reasonable, legal, and not capable of revocation by either, and it will be respected in equity. An oral arrangement for an easement or license such as the maintenance of a ditch and graded road, serving as an embankment, in connection with drainage of land is valid and enforceable if it has been fully executed and used to advantage by the parties to the arrangement. A parol grant of an easement or license like any other contract may rest in implication. Gilmore v. Armstrong, 48 Neb. 92, 66 N. W. 998; Znamanacek v. Jelinek, 69 Neb. 110, 95 N. W. 28, 111 Am. S. R. 533; Arterburn v. Beard, 86 Neb. 733, 126 N. W. 379; Wachter v. Lange, 94 Neb. 290, 143 N. W. 207; Brown v. Story, 133 Neb. 535, 276 N. W. 155; Fitzsimmons v. Gilmore, 134 Neb. 200, 278 N. W. 262; Magnuson v. Coburn, 154 Neb. 24, 46 N. W. 2d 775; Annotation, 101 A. L. R. 983.

The relief asked by appellants or the claim for damages made in the counterclaim of appellees is not sustained by the record and each should be denied.

The judgment of the district court should be and it is affirmed.

AFFIRMED.